# Ex parte W. E. GAMMEL.

No. A-11118.   July 27, 1949.

(208 P. 2d 961.)

Joe Reily, of Shawnee, and Rowe Cooke, of Oklahoma City, for petitioner.

Randall Pitman, of Shawnee, for defendant.

JONES, P. J. This is an original action in habeas corpus instituted by the petitioner, W. E. Gammel, for the purpose of securing his release from confinement in the city jail at Shawnee.

In the verified petition filed herein it is alleged that the petitioner is the owner and operator of a business located in the city of Shawnee known as the Century Club and that his business consisted in selling nonintoxicating beverages containing not less than one-half of one per cent, nor more than 3.2 per cent of alcohol measured by weight; that he has procured a permit from the State of Oklahoma and the county judge of Pottawatomie county, and has otherwise met all of the provisions of the state laws providing for and relating to the sale of such beverages.

That the city of Shawnee, a municipal corporation, on July 8, 1948, duly passed a purported emergency ordinance for the purpose and with the intent to control and regulate the sale of 3.2 beer; that said ordinance reads as follows:

"Now, Therefore, Be It Ordained By The Mayor And Board Of Commissioners Of The City Of Shawnee, Oklahoma:

"Section 1. It shall be unlawful for any person, firm or partnership or corporation to maintain, establish or operate any place within the City of Shawnee, Oklahoma, where 3.2 beer is sold at retail in violation of any of the provisions of this ordinance, or upon failure to perform any conditions required herein for the regulation of said place.

"Section 2. It shall be unlawful for any person to sell or serve 3.2 beer, to any person under the age of twenty-one years, or to a known habitual drunkard, or to any person under the influence of intoxicating liquor, regardless of whether said beer is to be consumed on the premises where sold, or carried away.

"Section 3. It shall be unlawful for the owner or operator of, or any person in charge of any place where 3.2 beer is sold, to use or employ any minor person under twenty-one years of age, to sell or serve 3.2 beer.

"Section 4. It shall be unlawful for the operator or owner of any beer tavern or beer parlor, or person in charge of same, to knowingly permit any minor, under the age of twenty-one years, or any unescorted female person, not an owner or employe, to enter into, frequent, or loiter in or about a beer tavern or beer parlor.

"For the purposes of this Ordinance, a Beer Tavern or Beer Parlor, is defined to be any place where 3.2 beer is sold for consumption on the premises, where 15 per cent or more of the monthly dollar volume of sales or income from said place or business, excluding income from dominoes and pool, is derived from the sale of 3.2 beer.

"Section 5. No beer tavern or beer parlor or place where 3.2 beer is sold shall use any curtain or screen, or painted or otherwise discolored glass front, door or window of said place in excess of three feet in height from the floor of said premises so as to obstruct the view of the inside premises occupied by said beer tavern from the outside or sidewalk or street running along in front of or beside the same.

"Section 6. It shall be unlawful for any person to sell or serve beer at retail in any booth or enclosed room or to permit the same to be consumed therein. Providing that partitions in said places not exceeding 36 inches in height from the floor shall not be deemed to be a booth as defined in this Section.

"'Section 7. All places where 3.2 beer is sold at retail shall be deemed a public nuisance and a violation of this ordinance under any one of the following conditions:

"a. When any gambling, game of chance or any betting is permitted or carried on in such place.

"(b) When any disorderly conduct is permitted in such place.

"(c) When beer is sold to any person under twenty-one years of age.

"(d) When any intoxicating liquors are bartered, sold or given away or otherwise furnished, or the same is permitted to be done in such place.

"(e) When any person operating said place shall be guilty of public drunkenness.

"(f) When any drinking or intoxicating liquor is permitted in such place.

"(g) When the operator of such place has in his possession or on the premises in which said beer business is being operated a Federal excise or occupational tax stamp or receipt designating such person or premises as the person or place for dealing in liquor or evidencing the payment of a tax for being a dealer in such liquor.

"(h) When any loud, boisterous, unusual, noisy, profane or vulgar language is habitually or continuously permitted or tolerated in such room or place.

"(i) When any prostitute, vagrant, gambler, habitual drunkard, drug addict, lewd or immoral characters, habitual law violator, bootlegger, or person having a reputation of being a bootlegger is permitted to loaf and loiter in and about such place.

"(j) When said place is kept is an unclean and unsanitary condition.

"(k) When said place is not provided with adequate lighting and ventilation.

"(l) When such place is permitted to remain open contrary to the provisions of State law.

"(m) When said place is maintained and operated in violation of any of the sections of this ordinance.

"Section 8. It shall be the duty of the City Police to make frequent inspection of all places of business where beer is sold at retail for the purpose of enforcing the provisions of this ordinance, and when any person or persons are found to be violating any of the terms of this ordinance, the same shall be reported by the Police Department to the City Judge and the City Attorney, and it shall be the duty of the City Judge and the City Attorney to report the same to the County Judge and the County Attorney and request the County Judge to cancel the license of any person found guilty of violating this ordinance.

"Section 9. Any person, firm or corporation violating any of the provisions of this ordinance, either by doing anything which is prohibited or by failng to do anything which is commanded, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished in any amount not exceeding $100.00 and cost, or imprisonment in the City jail of not more than thirty days or by both such fine and imprisonment, provided that each day of such violation shall constitute a separate offense.

"Section 10. That all ordinances and parts of ordinances in conflict herewith are hereby repealed.

"Section 11. In the event that any portion of this ordinance shall be held unconstitutional or invalid or ineffective for any reason, by any court of competent jurisdiction, whether it be a section, paragraph, clause, phrase or work, such holding shall not affect the validity of the remaining and other provisions of this ordinance, but the same shall continue in full force and effect notwithstanding such holding, and the City Commission hereby declares that it would have passed the valid and effective parts and provisions of this ordinance without the inclusion of any parts or provisions hereof which may be

deemed, adjudged or decreed to be invalid, unconstitutional, or ineffective.

"Section 12. That for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this ordinance shall be in effect immediately from and after its passage, approval and publication.

"Passed and approved this 8th day of July, 1948.

"That the petitioner in the operation of said business and long prior to the adoption of said ordinance had caused his front window to be painted in excess of thirty-six inches in height and had constructed wooden booths in the interior of his building for the benefit of his customers which exceeded thirty-six inches in height from the floor.

"That your petitioner was charged in the Municipal Court of the city of Shawnee with the violation of Sections 5 and 6 or said ordinance and on the 13th day of August, 1948, was tried, found guilty and sentenced to pay a fine of $25 and upon his failure to pay the same was committed to the city jail where he now remains; that said Sections 5 and 6 of said ordinance are void, invalid, and unconstitutional for the following reasons:

"(a) That they attempt to regulate private business.

"(b) That they are in direct conflict with the general laws of the State of Oklahoma in regulating the sale of non-intoxicating beverages.

"(c) That they constitute an unreasonable, arbitrary and oppressive regulation of a lawful business and are not a valid exercise of the police powers.

"(d) That they are an unreasonable and arbitrary classification of a lawful business, and are class legislation and contravene Section 59 of Article 5 of the Constitution of the State of Oklahoma.

"(e) That they are discriminatory in that they do not effect and apply to all classes engaged in selling non-intoxicating drinks and beverages in the City of Shawnee,

Oklahoma, and their enforcement will not tend to promote the public health, safety and welfare.

"(f) That the enforcement thereof will deprive petitioner of his property without due process of law, and are and will be an invasion of his private rights."

"That because said Sections 5 and 6 are invalid and unconstitutional a judgment and sentence based upon a violation of said sections would be a void judgment, etc."

By way of response the Chief of Police admitted the arrest, prosecution and conviction of the petitioner for violation of sections 5 and 6 of said ordinance and further alleged that the city of Shawnee is a municipal corporation operating under a charter form of government; that under the police power of said municipality it had a lawful right to regulate the sale of 3.2 beer for the reason that the same contains alcohol and if taken in sufficient quantities will produce intoxication; that there are several places of business in the city of Shawnee devoted exclusively to retail sale of 3.2 beer, including that of the place of business operated by petitioner; that said ordinance No. 843 described in the petition was duly enacted for the purpose of enabling the police department to more carefully and thoroughly inspect beer taverns and prevent law violations; that sections 5 and 6 specifically are necessary for the proper regulation of said beer taverns.

The petitioner filed a reply to the response in which he alleged that the decal painted on the front window of said petitioner's tavern is not of sufficient height to prevent the citizens of the city of Shawnee, including police officers of said city, from viewing the interior from the sidewalk. A true photograph of said window was attached and made a part of said reply; that the booths of the petitioner contained in said building are not of

sufficient height to prevent a policeman from observing the occupants therein. A photograph of said booths was made and attached as part of the reply.

At the hearing before this court the cause was submitted upon a transcript of the evidence taken in the district court of Pottawatomie county wherein the petitioner had attempted to obtain an injunction restraining the city from enforcement of said ordinance. The district court in said hearing refused to enjoin the enforcement of said ordinance, but ruled section 4 invalid and no appeal was taken from the judgment. The city admits the invalidity of section 4 and asserts that they are not attempting to enforce said section of said ordinance.

However, the petitioner contends that the invalidity of section 4 affects the whole ordinance and that no section of said ordinance may be sustained because of the invalidity of section 4.

As we view this case, the issue may be decided by a consideration of the proposition presented by the petitioner that the ordinance is in an intolerable conflict with the general laws of the state.

In the recent case of Ex parte Pappe, 88 Okla. Cr. 166, 201. P. 2d 260, this Court held:

"1. Under constitutional provision for adoption of home-rule charter, city adopting such charter is accorded full power of local self-government and, as such, municipal corporation has power to enact, ordain and enforce ordinances for purpose of protecting public peace, order, health, morals, and safety of inhabitants, even though general statutes exist relating to same subjects. Const. art. 18, § 3(a).

"2. The provisions of a charter, adopted and approved in accordance with such constitutional provision,

supersede all laws of the state in conflict therewith in so far as such laws relate to merely municipal matters.

"3. An ordinance passed under such charter provisions, which conflicts with the general laws of the state, must give way, and, while it may run concurrent with the general laws of the state, it may not run counter thereto.

"4. The Legislature and not the courts must determine the policy of the state to be voiced in statutory enactments. Legislative power, not wisdom, is the concern of the courts."

In the body of the opinion it is stated:

" 'It has also been further held that such charter provisions, where they conflict with the general laws of the state must give way, and while they may run concurrent with the general laws of the state they must not run counter thereto. State ex rel. Burns v. Linn, 49 Okla. 526, 153 P. 826, Ann. Cas. 1918B, 139. In other words a municipality may move in the same direction as the Legislature but not contrary to or in opposite directions. 3 McQuillin on Municipal Corporations, section 894; Ex parte Johnson, 20 Okla. Cr. 66, 201 P. 533; Ex parte Johnson, 13 Okla. Cr. 30, 161 P. 1097.' "

The respondent contends that they are not moving contrary to the general law of the state and that said ordinance is a valid and reasonable exercise of the police power.

It is well settled that a municipality operating under a charter form of government, may under its police power adopt ordinances which are necessary for the preservation of public health, safety, morals and general welfare of society. Ex parte Johnson, 20 Okla. Cr. 66, 201 P. 533; Ex parte Pappe, supra; Ex parte Strauch, 80 Okla. Cr. 89, 157 P. 2d 201; Ex parte Hodges et al., 65 Okla. Cr. 69, 83 P. 2d 201.

At the time of the adoption of the ordinance herein involved, the Legislature had passed a general law regulating the sale of nonintoxicating beverages containing not less than one-half of one per cent of alcohol nor more than 3.2 per cent of alcohol by weight. Under this general law, a person before he may sell such beverage must first secure a permit issued by the county judge in the county wherein the premises for the sale of such beverage are located. The person applying for such permit must make a showing once a year and must possess certain qualifications, to wit:

1. He must be a person of good moral character.

2. He has never been convicted of violating the liquor laws or any of the gambling laws of the state or any other state of the United States within three years preceding the date of his application.

3. He must never have had any permit or license to sell such beverages revoked in any county within 12 months preceding his application.

4. He must not be the holder of a retail liquor permit or license from the United States Government.

Laws 1947, p. 291, sec. 11, 37 O. S. Supp. § 163.11, as added in 1947.

Said general law further provides for the revocation of the permit upon five days notice to the person holding such permit for certain reasons, to wit:

1. Drunkenness of the person holding such permit.

2. Permitting any intoxicated person to loiter in or around his place of business.

3. The sale to any person under 21 years of age of such beverage for consumption on the premises.

4. Nonpayment of any of the taxes or license fees on complaint of the Oklahoma Tax Commission.

5. Violating any of the laws of the state commonly called prohibition laws or violating any of the gambling laws of the state, or permitting any one to violate said laws in such places.

6. Conviction for the violation of any of the laws of this state or United States for the sale or possession of intoxicating liquor within three years immediately preceding the issuance of the license.

7. Proof that the operator has in his possession or on premises of the business in which his business is being operated a Federal Excise or Occupational Stamp Tax or receipt.

"To move in the same direction" as that expression is used in the opinions of this court means that the municipalities of the state may adopt such reasonable regulations as conform to the state statutes and thereby make those acts which are a violation of the laws of the state likewise a violation of the ordinances of the city.

In the instant case, if the city under its express or implied police power can enlarge upon the qualifications which the Legislature has seen fit to adopt as a prerequisite to the issuance of a license to sell beer, then the governing body of a municipality might adopt such regulations as would amount to the deprivation of the right of the individual to sell such beverage. Apparently, the Legislature entered this fertile field and passed such regulations as they thought should surround the sale of this beverage. If they had thought that further regulations in the cities or more populous areas might have been necessary, it would have been a small matter to have provided that such municipality might pass further regula-

tions to control the sale of such beverages within such municipalities.

A part of the ordinance moves in the same general direction as the Legislative Act of 1947, supra. We speak more particularly of the provisions of section 7 of the ordinance; although some of the provisions of section 7 are an enlargement of the regulations prescribed under the general law. The only action taken by the Legislature to grant authority to municipalities to regulate the traffic in beer was the passage of the act permitting the cities to collect a tax or license fee from retail dealers of $10 and $20 per annum, depending upon the nature of the business. Tit. 37 O. S. Supp. §. 163.10 as added in 1947.

The Supreme Court of Oklahoma in the case of Salaney v. Ferris, District Judge, 201 Okla. 236, 204 P. 2d 270, held that the qualifications set forth in the general law of the state pertaining to a retail dealer in beer were all of the qualifications that it was necessary for a person to possess in order to secure a license to sell such beverages.

The petitioner, Gammel, has met every qualification provided by the state law to sell beer which contains an alcoholic content of not more than 3.2 per cent measured by weight and has been issued a state and county license. No proof has been offered and no contention has been made by the respondent that the petitioner has violated any of the conditions of the statutes hereinabove named which would justify or require the county judge after five days' notice to revoke his permit to sell beer. Under the two sections of the ordinance herein attacked the petitioner in order to sell this beverage in accordance with the state and county licenses must change

the appearance of the exterior of his place of business and destroy part of the furniture in the building. The question to retermine is when a municipality, under its express or implied police power, may step in and attempt to regulate by ordinance a private business expressly authorized by the general law of the state, which general law prescribes the qualifications and conditions under which such private business may operate.

It is our conclusion that, since the Legislature in its wisdom has defined a beverage containing not more than 3.2 per cent of alcohol as measured by weight as nonintoxicating, and has authorized its sale under certain restrictions and qualifications, no municipality may add to the restrictions or qualifications thus laid down by the Legislature. The Legislature has spoken so that there would be a uniform application of the law in each county and municipality of the state. Evidently, it was the purpose and intent of the Legislature to fully prescribe all of the conditions under which the sale of this so called nonintoxicating beverage may be had and not leave the prescription thereof to a town or city council which might change its mood frequently.

If the present city council of Shawnee can require that places of business where beer is sold shall not serve such beverage in booths that exceed 36 inches in height nor where the windows are painted above 36 inches from the floor in order to enable policemen and the public in general who pass the place of business to see who is patronizing the place and drinking beer, and thus lessen its sale and potential evil consequences, the next city administration might decide that beer could only be sold in places that have their windows completely painted and in booths covered with curtains, so that no person

drinking beer in such establishment could be seen by the public for the reason they did not want the public to see any one drinking this beverage because of the bad example and influence it might have on the public.

The city has a right to pass such ordinances as are in substantial conformity to the state law and prescribe that violation of said ordinances shall be punishable in the municipal court. In that way, the municipality is "running concurrently with the general laws of the state and not contrary to or in an opposite direction."

The writ of habeas corpus as prayed is issued and respondent is ordered to release the petitioner from his custody.

BRETT, J., concurs.